FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

JUL 02 2015

JAMES W. McCORMACK, CLERK
By: _____ DEP CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS

UNITED STATES OF AMERICA                                              PLAINTIFF

v.                          CASE NO. 4:15CV 403 -BSM

$791,985.00 IN U.S. CURRENCY                                         DEFENDANT

## VERIFIED COMPLAINT *IN REM,*

The United States of America, by Christopher R. Thyer, United States Attorney for the Eastern District of Arkansas, and Assistant U.S. Attorneys Cameron C. McCree and Erin O'Leary, for its verified complaint *in rem* against the above-described property, states:

### NATURE OF THE ACTION

1.     This is an action to forfeit to the United States $791,985.00 in U.S. Currency ("the Defendant Currency").

2.     This action is governed by Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions.

### JURISDICTION AND VENUE

3.     This Court has subject-matter jurisdiction over this action under 28 U.S.C. §§ 1345 and 1355(a).

4.     This Court has *in rem* personal jurisdiction over the Defendant Currency under 28 U.S.C. § 1355(b).

5.     Venue is proper in the Eastern District of Arkansas under 28 U.S.C. §§ 1355(b)(1) and 1395 because the events giving rise to this forfeiture action occurred in this district. Venue is also proper because the Defendant Currency is located in this district. The Defendant Currency .
is presently in the custody of the United States Marshals Service in Little Rock, Arkansas.

This case assigned to District Judge _____
and to Magistrate Judge _____

## BASIS FOR FORFEITURE

6.      The Defendant Currency is subject to forfeiture under 21 U.S.C. § 881(a)(6) because it constitutes (1) money intended to be furnished in exchange for a controlled substance; (2) proceeds traceable to such an exchange; and (3) money used and intended to be used to facilitate a violation of the Controlled Substances Act.

## FACTS

7.      The Defendant Currency was seized from Yue Jiang Zeng and Khanh Hoang Pham in January 2015 following a traffic stop on Interstate 40 near mile marker 92, which is close to Pottsville, Pope County, Arkansas.

8.      On January 7, 2015 around 9:34am, Arkansas State Police Corporal ("Cpl.") Chris Goodman conducted a traffic stop on a white 2012 Peterbilt Diesel Tractor Truck for swerving onto the right shoulder several times.

9.      Cpl. Goodman spoke to Pham, the driver, and requested his logbook, and Pham compiled.

10.     Pham seemed to be nervous during the conversation.

11.     The logbook showed that Pham, and his co-driver, Zeng, had taken off several days in California prior to this trip.  It also showed that they had gone to New York where they delivered a load of cargo and picked up the load they were carrying on the day of the traffic stop.

12.     While talking to Pham, Cpl. Goodman asked him if there was anything illegal in the truck, and this seemed to make Pham even more nervous.

13.     During the stop, Cpl. Goodman also had contact with Zeng, and Zeng also appeared to be nervous.

14.     Cpl. Goodman asked Pham for consent to search the truck and trailer for anything

2

illegal, and Pham granted his request.

15.     During the search of the truck and trailer, Cpl. Goodman looked in a side closet of the truck.

16.     A search of that closet uncovered a FedEx box and a dufflebag.

17.     The FedEx box was full of rubber banded bundles of United States currency.

18.     The dufflebag contained a Macy's sack, which contained several loose rubber banded bundles of United States currency.

19.     During the search, Cpl. Goodman also searched under the bed that Zeng had been sleeping on, and he found two black bags.

20.     One black bag was completely full of vacuum sealed bags that contained rubber banded bundles of U.S. currency.

21.     The other bag, a backpack, was full of loose rubber banded bundles of U.S. currency.

22.     Both bags had locked zippers.

23.     Zeng said that the money in the Macy's sack in the closet belonged to him.

24.     Zeng denied knowing anything about either bag that was found underneath his bed.

25.     Zeng said that he earned the money in Macy's sack from doing labor, but when asked what type of labor and the name of his employer, he became evasive.  Ultimately, Zeng said that he could not think of the employer who paid him the money.

26.     Later, Zeng said that the only money in the truck that belonged to him was $3,000.00, which was in his duffel bag.

27.     Cpl. Goodman found the three $1,000.00 bundles Zeng said belonged to him; they

were located in the pocket of the duffle bag.

28.     Cpl. Goodman did not seize the three $1,000.00 bundles.

29.     ASP Trooper Seth Race, who was riding with Goodman on the day of the stop for field training, placed Pham in Goodman's car.

30.     Cpl. Goodman and Trooper Race called for assistance, and ASP Cpl. Freddie Williams, Chase Melder, and Lonnie Moore, responded.

31.     All officers, Zeng, and Pham went back to the Pope County Sheriff's Office for further investigation.

32.     Cpl. Williams drove the Zeng and Pham's truck, Cpl. Goodman transported Pham, Cpl. Melder transported Zeng, and Cpl. Moore drove Williams's car.

33.     When they arrived at the Pope County Sheriff's Office, the officers on the scene met Sergeant Ben Cross and Drug Taskforce Agents Chad Stephenson and David Bevis.

34.     Cpl. Goodman also requested that the Drug Enforcement Administration assist with the investigation.

35.     While at the Pope County Sheriff's Office, Pham spoke with Goodman and disclaimed ownership of any of the money seized by law enforcement.

36.     Pham said that the only money that belonged to him was the $600.00 that was found in his logbook and that this was for fuel.  Law enforcement did not seize those monies.

37.     Pham said of the other money that Zeng must have snuck it on to the truck while Pham was sleeping.

38.     When Cpl. Goodman attempted to speak with Zeng about signing a disclaimer for the money found under his bed, Zeng then said that all the money found in the closet belonged to him and that the two bags found in the closet (the FedEx bag and the Macy's bag) contained

around $30,000.00 in them and that the money was for his labor.  Zeng continued to deny that the money found underneath his bed belonged to him.

39.     Law enforcement attempted to conduct a formal interview of Zeng, but he declined to be interviewed without a lawyer present.

40.     Cpl. Melder, the K9 Officer, acting with the assistance of other officers, conducted a controlled hide in the sally port of the sheriff's office, during which he walked his K9 partner, Pavatt, around the bags that were seized.

41.     Pavatt gave a positive alert to the odor of drugs on the money found in the truck.

42.     Ionscan swabs that were taken of the money, and multiple bundles of the money, included money found under Zeng's bed and in the Macy's sack, tested positive for the presence of cocaine.

43.     In November 2014, officers with the Drug Taskforce Office received an anonymous letter identifying the truck involved in this incident as a vehicle that was used to haul large quantities of marijuana from California.  Enclosed with the letter was a copy of Zeng's old driver's license and pictures of the truck.

44.     The positive ionscans and the manner in which monies were hidden and packaged, among other factors, indicate that the Defendant Currency is drug money.

45.     WHEREFORE, the United States prays that the Court issue an arrest warrant *in rem* as provided by Supplemental Rule G(3)(b), which the United States will execute on the Defendant Currency as provided by 28 U.S.C. § 1355(d) and Supplemental Rule G(3)(c); that notice be given to all interested parties to appear and show cause why forfeiture should not be decreed; that the Defendant Currency be forfeited to the United States; that due process issue to enforce the decree of forfeiture; and for all other proper relief.

Dated: July ___2___, 2015.

CHRISTOPHER R. THYER
UNITED STATES ATTORNEY

By: _____
CAMERON C. McCREE (2007148)
ERIN O'LEARY (2011069)
Assistant U. S. Attorneys
P. O. Box 1229
Little Rock, Arkansas 72203
(501)340-2600
Cameron.McCree@usdoj.gov
Erin.O'Leary@usdoj.gov

## VERIFICATION

I, Josh Laster, verify and declare under penalty of perjury that (1) I am a Special Agent with the Drug Enforcement Administration; (2) I have read the this verified complaint and know its contents; and (3) the matters contained in the complaint are true to my own knowledge, except that those matters stated to be alleged on information and belief and as to those matters, I believe them to be true.

The sources of my knowledge and information and the grounds of my belief are (1) my participation in this investigation, (2) information learned from oral and written reports prepared by other law enforcement officers, and (3) information from witnesses, physical surveillance, seized contraband, and other physical evidence.

I hereby verify and declare under penalty of perjury that the foregoing is true and correct.

Dated: July ⟍ , 2015.

JOSH LASTER, Special Agent
Drug Enforcement Administration